IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| COLLEEN H.A. SULLIVAN, individually and as Trustee of her Trust Agreement dated November 27, 1979, <br><br> Plaintiff, <br><br> vs. <br><br> ELLIOT H. LODEN, <br><br> Defendant. | Civil No. 21-00123 MWJS-RT <br><br> ORDER ON PLAINTIFF'S MOTIONS IN LIMINE NOS. 1 – 3 AND 5 – 7 |

## **INTRODUCTION**

This is a diversity jurisdiction case involving claims of legal malpractice and a breach of fiduciary duty against an attorney who represented an estate. At the heart of the case is Plaintiff Colleen Sullivan's allegation—which she intends to prove, in part, through her own testimony—that her mother, Joanna, wished to make substantially equal gifts to each of her four children. Sullivan claims that Joanna's longtime attorney, Defendant Elliot Loden, undervalued stock gifts that Joanna gave

to Sullivan's sisters in 2011 and 2012.  As a result, Joanna allegedly gave

Sullivan (and her brother) smaller corresponding cash gifts than she would

have done had she known the true economic value of the stock gifts.

A jury trial is scheduled to begin on October 15, 2024, and the parties

have filed motions *in limine* seeking pretrial guidance on certain

evidentiary disputes.  Sullivan has filed seven such motions, docketed at

ECF Nos. 201, 208, 212-15, and 217.  Loden has filed fourteen of his own,

which are docketed at ECF Nos. 192-96, 198-99, 207, 216, and 218-21.

In an earlier order, this Court granted the first of Loden's motions.

ECF No. 262.  The Court then held hearings on the remaining motions on

October 4 and 8, 2024, ECF Nos. 265 and 274, at which time the Court orally

granted Sullivan's fourth motion.  By way of this order, the Court rules on

Sullivan's remaining motions.[1]

---

[1]     This order assumes the reader's familiarity with the underlying facts and
background and refers to them only as necessary to adequately address the issues
presented.  Moreover, *in limine* rulings "are by their very nature preliminary."  *United
States v. Whittemore*, 776 F.3d 1074, 1082 (9th Cir. 2015) (quoting *Coursen v. A.H. Robins
Co., Inc.*, 764 F.2d 1329, 1342 (9th Cir. 1985)).  So while the parties must comply with
them so long as they are in place, the parties may renew their motions at trial.

## DISCUSSION

### A.     Plaintiff's Motions *in Limine* Nos. 1, 3, and 6 [ECF Nos. 201, 215, and 213]

In her first, third, and sixth motions *in limine*, Sullivan seeks to preclude certain events that occurred shortly before and after Joanna passed away.  Sullivan argues that these events have little or no probative value, but that they would unfairly prejudice her.  The only point of this evidence, Sullivan suggests, would be to portray her as a bad person. Loden has submitted separate responses to each of the motions, but generally argues that Sullivan's strained relationship with her mother is highly probative of a key issue in this case:  whether Sullivan is a reliable narrator as to how Joanna intended to distribute her estate's assets.  The Court agrees with Loden that the evidence at issue in these motions *in limine* is highly probative of that key credibility determination and that the risk of unfair prejudice to Sullivan does not substantially outweigh the probative value.  The Court also concludes that the risk of unfair prejudice can be mitigated through limiting instructions.

1.  In the first of her motions, Sullivan seeks to preclude evidence of a September 4, 2015, incident.  Allegedly, at 2 a.m. that morning, Sullivan attempted to enter the residence of Joanna, who had passed away two days earlier.  ECF No. 238, at PageID.7576.  A security guard, Frank Fine, prevented her from entering and the police were called to the scene.  *Id.* at PageID.7577.  Sullivan now seeks to exclude Fine's testimony, a police report of the incident (Defendant's Exhibit 398; ECF No. 201-3), and any other testimony about these events.  She contends that the events are not relevant to her claims against Loden and that they would be unfairly prejudicial to her.  ECF No. 201, at PageID.3409.

The September 4, 2015, incident does present the risk of some unfair prejudice to Sullivan:  she is alleged to have attempted to enter the home of her recently-deceased mother, where her mother safeguarded a number of valuable items of property.  *See* ECF No. 238, at PageID.7578.  And she allegedly did so at 2 a.m. in the morning, which a rational jury could infer is an unusual hour for a legitimate visit.

But the question under Federal Rule of Evidence 403 is not whether, in a vacuum, evidence presents a risk of unfair prejudice.  The question instead is whether the "probative value" of relevant evidence "is substantially outweighed by a danger" of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Put differently, Rule 403 tolerates some risk of unfair prejudice if that risk does not *substantially* outweigh the probative value of the challenged evidence.

In this case, a key issue for trial—perhaps *the* key issue—is whether Joanna truly meant to give her children essentially equal gifts.  The parties will offer various forms of evidence to argue their side of that issue. Loden, for example, will argue that if Joanna meant to treat all of her children in a mechanically equal way, she would have included an equalization clause in her will or trust, which she did not.  And Sullivan intends to testify that she understood her mother's intentions and that her mother intended to give each of her children nearly identical gifts.  Given this anticipated testimony, a critical question for the jury will be whether

Sullivan's understanding of her mother's intentions is credible. The jury will then be asked to determine not only whether Sullivan is making her best effort to tell the truth, but also whether she truly understood her mother's intentions as well as she now claims.

The evidence challenged in these motions, therefore, will aid the jury in conducting that important assessment. Any evidence that reveals a significant rift between Sullivan and Joanna is highly probative of Sullivan's credibility as a narrator of her mother's intentions. Evidence that Joanna concluded, before her death, that it was necessary to lock down her home with paid security to prevent Sullivan from absconding with valuable items—and evidence that, as Joanna feared, Sullivan attempted to do precisely that—is highly probative of whether Sullivan and her mother were on the same page. From that evidence, a rational jury could infer that even if Sullivan is truthfully testifying about what she understood her mother's intentions to be, the reality is that Sullivan did not truly understand her mother's intentions. To be clear: Loden will first need to lay a factual foundation that Joanna really was concerned that Sullivan—as

opposed to, say, a burglar—would try to enter her home after her death. Without that factual foundation, the evidence that Sullivan did in fact attempt to enter the residence would no longer be relevant. But Loden should be permitted the opportunity to lay that factual foundation at trial.

Sullivan disagrees, and she expresses the concern that a jury could infer, from her alleged break-in, that she is a bad person. Other improper inferences could conceivably flow from there. But given the precise way in which Loden intends to use this evidence, the Court does not believe the risk is more than a modest one. The point of this evidence is not to show that Sullivan was a bad person who was allegedly trying to take valuable items from her mother's residence. It is to show that Sullivan's understanding of her mother's intentions did not actually align with Joanna's intent. And the Court is prepared to give a limiting instruction to that effect—should Sullivan timely propose one—to address the modest risk of unfair prejudice. *See United States v. Harley*, 790 F. App'x 844, 845 (9th Cir. 2019) (affirming district court's admission of defendant's "racist remarks" because they "offered insight into [the defendant's] intent, and

any prejudice was minimized by the limiting instructions that were given"); *United States v. Kaneshiro*, No. 1:22-CR-00048, 2024 WL 1024647, at *7 (D. Haw. 2024) (allowing prosecution to admit evidence of defendants' "litigiousness," but agreeing to a limiting instruction to mitigate any risks of unfair prejudice).  Moreover, Loden's counsel will not be permitted to argue that Sullivan acted in conformity with some character trait, which will further reduce any risk of unfair prejudice.  *See* Fed. R. Evid. 404(b)(1).

In addition to her evidentiary objection, Sullivan raises a procedural objection to Fine's testimony:  that he was not identified as a witness in Loden's disclosures under Federal Rule of Civil Procedure 26(a)(1).  *See* ECF No. 201, at PageID.3406.  For that reason, Sullivan argues that Loden should be precluded from calling Fine as a witness.  It is true that Federal Rule of Civil Procedure 37(c)(1) precludes an undisclosed witness from testifying at trial unless the failure to disclose "was substantially justified or is harmless."  *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012).  But under the circumstances, the Court concludes that any shortcoming in Loden's Rule 26(a) disclosures was harmless.  Sullivan

has long known about the potential relevance of this incident because (1) on August 5, 2021, Loden issued a "subpoena duces tecum on the Honolulu Police Department for the relevant records" and Sullivan was aware of this request, ECF No. 238, at PageID.7583; and (2) as Sullivan herself acknowledges, ECF No. 201, at PageID.3409, she was asked about the incident during her July 19, 2022, deposition.  Perhaps most significantly, allowing this testimony would be harmless because Sullivan herself was involved as a participant to the incident (a point her motion papers do not dispute) and the facts related to it are straightforward. Under these circumstances, a Rule 37(c)(1) witness exclusion sanction is not warranted.

Sullivan separately raises a challenge to a police report of the incident (Defendant's Exhibit 398, ECF No. 201-3).  She argues that the report contains hearsay and is therefore inadmissible under Federal Rule of Evidence 802.  ECF No. 201, at PageID.3408-09.  But any statements that are based on "[p]ersonal observations of officers contained in the police reports are generally admissible" under Federal Rule of Evidence 803(8).  *Crim v.*

*King*, 65 F. App'x 591, 594 (9th Cir. 2003).  The remaining statements in the

report come from Fine, Sullivan, and Sullivan's friend.  ECF No. 201-3, at

PageID.3428-29.  It is true that "statements by third parties who are not

government employees (or otherwise under a legal duty to report) may not

be admitted pursuant to the public records exception but must satisfy some

other exception in order to be admitted."  *United States v. Morales*, 720 F.3d

1194, 1202 (9th Cir. 2013).  But Sullivan's own statements, as they appear in

the report, qualify as admissible opposing party statements under Federal

Rule of Evidence 801(d)(2).  As to Fine's statements, those are admissible

under Federal Rule of Evidence 801(d)(1) because Fine is a declarant-

witness who will testify and may be cross-examined about his prior

statements.  And while two sentences ascribed to Sullivan's friend are not

admissible for any evident purpose, they can easily be redacted.  ECF No.

201-3, at PageID.3429.

For the foregoing reasons, Plaintiff's Motion *in Limine* No. 1 is

DENIED, subject to a limiting instruction and subject to the redaction of the

statements of Sullivan's friend in the police report.  Because Loden

indicated, at the hearing on this motion, that he no longer intended to call

any witness other than Fine, the motion is DENIED as moot as to other

witnesses.

2.  A similar analysis extends to Plaintiff's Motion *in Limine* No. 3.  In

that motion, Sullivan argues that evidence related to Joanna's healthcare

treatment and the use of morphine prior to her death should not be

admitted.  *See* ECF No. 215.  Here again, Sullivan argues that this evidence

is not relevant to her claims.  ECF No. 215, at PageID.4159-60.  She further

contends that "evidence that Joanna was receiving morphine as prescribed

medication would be substantially prejudicial and unfairly confuse the

issues and be a waste of time under Rule 403."  *Id.* at PageID.4160.

The Court disagrees.  As explained above, one of the key issues in

this case is Joanna's intent.  And evidence that Sullivan sought to have

morphine administered to her mother would tend to corroborate Loden's

contention that Sullivan "wanted to have her mother declared

incompetent."  ECF No. 242, at PageID.8146.  That contention, if proved,

would tend to show that Sullivan was dissatisfied with how Joanna

11

intended to distribute her assets—which, in turn, would strongly indicate that Sullivan cannot now credibly recount Joanna's intentions. The evidence relating to Joanna's healthcare and the administration of morphine is, therefore, properly admitted for these specific purposes. And here again, to the extent there is any risk of unfair prejudice, that risk can be managed through a limiting instruction.

To be sure, evidence concerning morphine is not, on its own, sufficient to support a rational inference that Sullivan wished to declare her mother incompetent. There are any number of reasons—many of them legitimate—for why a child would want her mother to receive morphine as part of end-of-life care. So while Sullivan's alleged desire to administer morphine to her mother is admissible *if* Loden offers *other* evidence to support the contention that Sullivan sought to have her mother declared incompetent, the Court will not permit the morphine-related evidence to do all of the work itself.

The Court cautions that Loden must lay a foundation for using the morphine-related evidence before introducing it at trial. More specifically,

Loden will need to supply sufficient evidence for his assertion that Sullivan sought to have Joanna declared incompetent.  Only if that factual foundation is laid may Loden then use the administration of morphine to corroborate or support that other evidence.[2]

With these understandings, and subject to a limiting instruction, the Court DENIES Plaintiff's Motion *in Limine* No. 3.

3.  Finally, in Plaintiff's Motion *in Limine* No. 6, Sullivan moves to preclude Loden from calling Sullivan's own trial counsel to testify, as well as to preclude emails that her counsel wrote and received in 2015.  ECF No. 213.

At the hearing on this motion, Loden's counsel indicated that they have no intention of calling Sullivan's counsel to the stand.  But Loden does wish to introduce evidence of email correspondence between one member of Sullivan's trial counsel team (Nancy Temple) and one of

---

[2]    To the extent Loden needs to cross-examine witnesses in Sullivan's case-in-chief about the morphine before he is able to provide evidence about Sullivan's alleged effort to have Joanna declared incompetent (say, for example, that it is Loden himself who would testify about that latter fact), Loden may ask for permission to develop the morphine-related evidence subject to connection.

Sullivan's sisters (Jenai Wall) and Loden.  And because "Jenai will be testifying at trial," Loden explains that "Plaintiff's counsel is not needed to authenticate the communications."  ECF No. 232, at PageID.6173.

        a.  Defendant's Exhibit 397 is an email from Temple to Jenai dated August 31, 2015, inquiring about the location of cameras at Joanna's residence.  ECF No. 213-3, at PageID.4139.  Defendant's Exhibit 396 includes an email from Jenai responding to Temple, and another email from Temple in response to that email from Jenai.  ECF No. 213-2, at PageID.4136-37.

Sullivan argues that these exhibits are not relevant to her claims and should be excluded because there is "substantial prejudice" that would "outweigh[] any probative value" of "these collateral matters."  ECF No. 213, at PageID.4132.  The Court disagrees.  As Loden explains, these emails are probative to show that around the time of Joanna's passing, "the relationship between Plaintiff and her siblings was contentious enough that Plaintiff told Jenai to speak to her through Ms. Temple."  ECF No. 232, at PageID.6174-75.  That strife between the siblings is highly probative for

14

two reasons.  First, there is evidence that Joanna was well aware of the conflicts between her children.  For instance, Loden will offer evidence that Joanna specifically included a clause in her testamentary document that showed she did not want the distribution of her assets to cause strife between her children.  *See* ECF No. 232-3, at PageID.6193 ("It would be, as Grantor, my profound disappointment and sorrow that what I, as Grantor, and my spouse, MAURICE J. SULLIVAN, have provided in the interest of benefiting the family and beneficiaries would lead to any injury to their relationship.").  Second, a jury is entitled to consider the significance of the fact that Joanna took steps in her will to address the strife between her children, but notably did not take the most obvious step to effectuate the alleged intention to give essentially equal gifts to all of her children— namely, the insertion of an equalization clause.

For these reasons, the Court DENIES Plaintiff's Motion *in Limine* No. 6 as to Defendant's Exhibits 396 and 397.  As discussed at the hearing on this motion, however, so long as Sullivan is willing to stipulate that her attorney sent and received these email messages, there is no need to

specifically identify Temple as that attorney.  Assuming such a stipulation is forthcoming, the Court expects Loden to redact Temple's name from the document before offering it as evidence at trial.

b.  Exhibit 399 is an email from Temple to Loden that recounts an earlier back-and-forth between Sullivan and her siblings and which concerned Sullivan's alleged hostile interactions with Joanna's nurses and "secret videotaping" at Joanna's house.  ECF No. 213-4, at PageID.4141.  Temple appears to document her conversation with Loden, describing what she said on the phone, what he said in response, and the allegations made against Sullivan.  These statements are hearsay.  And Loden provides no argument as to why they would be admissible.  Accordingly, if Loden wishes to introduce this document at trial, these inadmissible statements from Temple must be redacted.  The remainder of the document does have some probative value as to the state of the Sullivan siblings' relationship close to Joanna's death, however, and is also probative of Sullivan's credibility about her mother's intentions.

The Court therefore DENIES Plaintiff's Motion *in Limine* No. 6 as to Exhibit 399, subject to the redactions of hearsay statements as described above, and subject to the redaction of Temple's name if Sullivan is prepared to stipulate that the redacted person was one of her attorneys.

### B.    Plaintiff's Motion *in Limine* No. 2 [ECF No. 217]

Sullivan wants to preclude evidence of her net worth because she contends that it will be highly prejudicial and had no bearing on Joanna's distribution of the stock gifts.  ECF No. 217, at PageID.4327.  But Loden counters that Sullivan's net worth is almost entirely the result of various gifts that her parents gave her throughout her life.  ECF No. 230, at PageID.6083-84.  Loden's counsel also represents that Sullivan could not answer specific questions about those prior gifts at her deposition or via discovery, and so her total net worth is the best available proxy for those gifts.  *Id.* at PageID.6085.

The Court agrees with Sullivan that if the jury heard only her net worth, and heard nothing about her siblings, the evidence likely would be excludable under Federal Rule of Evidence 403.  But at the hearing on this

motion, Loden's counsel represented that they intend to offer evidence concerning the value of gifts given to all of Joanna's children.  Given Sullivan's central claim that Joanna intended to give essentially equal gifts to all of her children, a comparison of total gifts given to each of the siblings is highly probative.

To be sure, Loden's counsel does not intend to present total net worth figures for Jenai or Kitty; the evidence will more precisely focus on the actual gifts their parents gave them (as opposed to a total net worth), as Jenai and Kitty are able to break down those gift figures.  The comparisons remain valuable, though, because Loden contends that Sullivan's net worth is derived almost entirely from gifts from her parents and she has been unable to segregate those gifts from her other assets.  The Court agrees that the jury is entitled to hear this highly probative evidence.

Resisting this conclusion, Sullivan cites *United States v. Socony-Vacuum Oil Co.* for the proposition that "appeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to prevent them."  310 U.S. 150, 239 (1940).  But in that case,

prosecutors made arguments in closing that the defendants were "powerful people" who were "above the law and can't be reached" because of their significant wealth.  *Id.* at 237–38.  And while it is undeniable that the Sullivans are financially well-off, that fact alone is not unduly prejudicial to Sullivan or her claims.  Given the precise and limited purposes for which Loden seeks to elicit such information—for its relevance to the jury's understanding of whether Joanna wanted to treat her children "more or less equally"—the risk of undue prejudice is not significant.  ECF No. 230, at PageID.6083.  Defendant contends that "Mrs. Sullivan's intent was to treat her children fairly or equitably, not equally." *Id.* at PageID.6084; *see also id.* at PageID.6078 ("This case is all about the financial status of Plaintiff and her siblings, and whether their parents gave them gifts and bequests that left them 'more or less equal.'").  And any risk of prejudice related to Sullivan's wealth can be mitigated through a limiting instruction.

Subject to a limiting instruction, Plaintiff's Motion *in Limine* No. 2 is DENIED.

19

### C.    Plaintiff's Motion *in Limine* No. 5 [ECF No. 208]

Before her death, Joanna transferred her Foodland stock to Jenai and

Kitty.  Joanna asked Loden to prepare her gift tax returns to report these

stock gifts.  To do so, Loden appraised the value of the stock gifts, and then

relied on these appraisals in the completed gift tax returns.  The IRS did not

require any changes to those filings.  Loden later included these gift tax

returns with the estate tax return he filed after Joanna's death, and the IRS

eventually closed its audit of this return without requiring any

adjustments.  ECF No. 208, at PageID.3852.

In her Motion *in Limine* No. 5, Sullivan argues that Loden should be

precluded from testifying—and his counsel should be precluded from

arguing—that the IRS either "accepted" or "approved" Loden's appraisals

when it "closed the examination of the estate tax return in April 2018"

without requiring any changes.  *Id.*  Sullivan contends that (1) only an

expert could testify about the IRS's practices and procedures; (2) Loden's

anticipated testimony is factually inaccurate; (3) as a matter of law, the

IRS's past acceptance of a methodology cannot be taken as a tacit

admission that the methodology is reasonable; and (4) allowing testimony and argument along these lines would confuse the issues for the jury.

None of these arguments is persuasive.  Begin with Sullivan's contention that Loden would need to be qualified as an expert witness to testify about the IRS's practices and procedures.  It is true that, before Loden says that the IRS accepted or approved the appraisals, he must lay a sufficient factual foundation for inferring that the IRS considered the appraisals in its audit.  Sullivan argues that only an expert could lay that foundation.  But while an expert likely would be needed to opine on the question of *how* the IRS evaluates appraisals—that is, what techniques or methodologies the IRS employs[3]—the question of *whether* the IRS typically looks at appraisals in gift tax returns and estate tax returns is a simple question of fact.  It is the difference between asking *how* a scientist ought to analyze microbes (call an expert) and asking *whether* the scientist typically uses a particular kind microscope to do their work (a percipient witness

---

[3]      That is why, in its order granting Defendant's Motion *in Limine* No. 1, the Court determined that Special Administrator Mark Murakami could not offer lay opinion testimony about the reliability of Loden's appraisals.  ECF No. 262, at PageID.9832-35.

will do).  And as Loden's declaration makes clear, he is sufficiently aware

of what materials the IRS typically examines, both from his own experience

working at the IRS and from his extensive experience practicing before the

IRS in the years since, to lay that needed foundation.  ECF No. 266-2, at

PageID.10032-40 (Loden's Declaration).[4]

The Ninth Circuit's precedents support this conclusion.  Consider

*United States v. VonWillie*, 59 F.3d 922, 929 (9th Cir. 1995), for example, in

which the court found it a sufficiently commonsense observation for a

police officer to testify, as a lay witness, about the "nexus between drug

trafficking and the possession of weapons."  In reaching that conclusion,

the Ninth Circuit was not suggesting that *any* layperson would be expected

---

[4]      Sullivan separately argues that only someone inside the IRS could testify that the
IRS considered Loden's appraisals.  But there is no requirement that Loden offer direct
proof of such a fact; a jury may consider his circumstantial evidence that the IRS did so
in this case because it typically reviews appraisals when conducting an audit.

Sullivan's suggestions about the need for an IRS employee's testimony tee up a
separate point:  if Loden were to call such a witness, that person would not need to be
an expert.  Consider, for example, a non-expert at the IRS who observes that other
employees are in fact reviewing Loden's appraisals.  There is no doubt that that person
would be competent to offer layperson testimony on *whether* the IRS considered the
appraisals (even if they were not competent to testify about *how* appraisals should be
done or examined).  This further confirms that the factual question at issue is not one
reserved for expert opinion.

to know about the connection between guns and drugs.  The point, instead, was that even a person without specialized knowledge *could* develop that understanding—simply through commonsense observations—if they had the same experiences as a police officer.  In a similar way, it is the nature of Loden's observations that makes them suitable for lay opinion testimony.  And the nature of the observations does not change merely because Loden made them through IRS-related experiences that very few individuals ever have.

By contrast, in *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1244-46 (9th Cir. 1997), the court explained that special agents' observations of whether a defendant's actions "were consistent with those of an experienced narcotics trafficker" required specialized knowledge and therefore could only come from a qualified expert witness.  That is to say, the testimony offered in *Figueroa-Lopez* was not the sort of opinion that a layperson could develop through commonsense observations of facts.  It was akin to an evaluative *how* question (how closely does a defendant's conduct track that of a typical "experienced narcotics trafficker") rather

than the factual *whether* question (whether as a factual matter narcotics traffickers tend to use guns) at issue in *VonWillie*. That is why expert testimony was required in *Figueroa-Lopez*. And it explains why expert testimony is not needed here.

Sullivan next argues that even if Loden can testify about the IRS as a lay witness, he should not be allowed to do so because his proffered testimony is inaccurate. Sullivan relies on her own expert, Richard Campbell, who explains that "the statute of limitations for the 2011 and 2012 gift tax return appraisals had run by the time of the estate tax return and thus could not have been re-opened." ECF No. 208, at PageID.3853. For that reason, Sullivan contends that the IRS would have had no reason to consider the appraisals when it conducted the audit of Joanna's estate tax return. In a declaration, Loden responds that Campbell overlooks the fact that if the IRS's audit "disputed the Foodland valuation as prepared for the 2011 and 2012 gift tax returns," it "could have adjusted downward the newly Congress increased unified credit which was taken on the estate tax return and thus assessed additional estate taxes which were paid in an

amount of $58,000,000.00."  ECF No. 266-2, at PageID.10040.  It is unclear

whether Campbell would dispute Loden's assertion, but he may properly

be cross-examined about it at trial, and the jury can evaluate his credibility.

Campbell's credibility on this topic is not one the Court should resolve

through a motion *in limine*.[5]

Sullivan's third contention is that it is legally impermissible to offer

testimony or make arguments about the IRS's acceptance or approval of

prior returns.  But the authority she cites does not support her position.  In

*McPike, Inc v. United States*, 15 Cl. Ct. 94 (1988), a plaintiff had resolved a

dispute with the IRS through a negotiated settlement.  Then, in a tax refund

suit involving a later time period, the plaintiff argued that the IRS had

"tacitly admitted" that the taxpayer's methodology was reasonable.  *Id.* at

---

[5]    In a supplemental submission, Sullivan provides an additional excerpt from
Campbell's deposition, in which Campbell testified that he believed Loden was
"incorrect" in asserting that the "IRS accepted the validity of the 2011 and 2012
appraisals," and that he himself does not know what the IRS looked at.  ECF No. 279-2,
at PageID.10125.  Furthermore, Campbell's opinion appears to be that the IRS likely did
not review the appraisals—or at least did not do so carefully—as he suggests that the
fact that no adjustments were required means only that "they won the audit lottery."
*Id.*  But none of these statements require excluding Loden's testimony.  The jury should
be free to decide whether Campbell's assessment of the situation is more persuasive
than that of Loden.

97.  The court disallowed this argument under Federal Rule of Evidence

408, which prohibits the use of "circumstances surrounding the settlement"

to prove tacit approval.  *Id* at 99.  Here, there is no settlement or parallel set

of facts that would require the same outcome.  In this case, the IRS did not

back off from disputes over Joanna's gift tax and estate tax returns because

of a negotiated settlement.  The IRS simply accepted her returns.  Given

that there is no Rule 408 bar here, there is no reason why Loden should be

permitted to make fair use of the probative value of the IRS's acceptance.

Finally, Sullivan argues that it would confuse the issues for the jury if

Loden were permitted to testify that the IRS accepted his appraisals or if

Loden's counsel were permitted to argue the point in their jury addresses.

But Sullivan's legal malpractice claim puts squarely in issue the question of

whether Loden mishandled the appraisals and the tax returns.  It does not

confuse the issues to allow Loden to explain why he believes he handled

Joanna's requests appropriately.  And a full explanation of his view

necessarily includes the fact that his valuation—which resulted in the

estate paying less in taxes than Sullivan's position apparently would have

caused—was not bounced back by the IRS, but rather was accepted.  In

sum, Loden should be permitted to testify that "by not *overvaluing* the stock

gift," he sought on Joanna's behalf "to lessen the estate's tax burden"—and

that "he was able to do so successfully."  ECF No. 262, at PageID.9821.

And the most obvious and commonsense measure of his success is that the

IRS accepted and approved his work.

Accordingly, Plaintiff's Motion *in Limine* No. 5 is DENIED.

### D.   Plaintiff's Motion *in Limine* No. 7 [ECF No. 214]

In her final motion, Sullivan seeks to exclude testimony and

argument about the "no-contest" provision in Joanna's August 15, 2013,

trust, which became her operative trust after her death in 2015.

Her first argument is that "the construction of a trust is a question of

law, and thus not within the province of the jury."  ECF No. 214, at

PageID.4155.  But the Court need not resolve at this time whether there

might be any appropriate reason to allow the jury to interpret or engage in

the legal construction of trust terms, though the Court is doubtful there is

any such reason.  The precise evidentiary question here is a different one:

whether the jury may consider trust terms to make relevant factual findings. The answer is surely yes. Sullivan herself intends to point the jury to the August 15, 2013, trust's $1 million cash gifts to herself and her brother, and she will argue that the jury should find that these gifts support her contention that Joanna sought to give all of her children more or less equal gifts. There is no reason why Loden should be precluded from similarly using trust terms to make factual contentions. For example, there is no question—and Sullivan does not dispute—that Loden should be permitted to point to the fact that the August 15, 2013, trust does not contain an equalization clause. Loden is permitted to argue that if Joanna truly intended to give all of her children more or less equal gifts, an equalization clause would have been the obvious way to accomplish that end.

Similar kinds of factual arguments might also be permissible in connection with the no-contest clause. Two have been proffered in the parties' motion papers and at the hearings on this motion. First, Loden might argue that the no-contest clause—particularly given its unusual

breadth, which by its terms extends even to tort actions—reveals that

Joanna was more focused on avoiding in-fighting among her children and

less focused on ensuring that each child received the same penny-for-

penny gifts.  Used that way, the no-contest clause would bear on the key

issue in this case:  Joanna's intent.  Moreover, when used this way, the

question is *not* whether Sullivan's current lawsuit—which Joanna never

saw—actually falls within the terms of the no-contest clause.  So it is of no

moment that Sullivan insists her conduct has not violated the provision, or

that the Hawaiʻi Intermediate Court of Appeals may have suggested as

much.  *See id.* at PageID.4156.  The only question is whether Joanna's

intentions for her children, as reflected in the no-contest clause and the

supplementation that Loden might provide through his testimony,

contradict Sullivan's contention that Joanna's preeminent concern was to

make essentially equal gifts to her children.  The Court finds that this use of

the no-contest clause is highly probative, and there is little, if any, risk of

undue prejudice stemming from that use of the evidence.  To the extent

Plaintiff's Motion *in Limine* No. 7 sought to preclude evidence or argument

in this vein, it is DENIED.

A second way in which the no-contest clause might be used would be

to argue about Sullivan's motives in bringing this lawsuit, with the aim of

impugning her credibility as a witness at trial.  At the hearing, Sullivan's

counsel argued that under Hawaiʻi state law, allowing evidence for this

purpose would be reversible error.  But the case they cited lends at least

some support to the opposite view.  *See Medeiros v. Choy*, 142 Hawaiʻi 233,

241, 418 P.3d 574, 582 (2018) ("[C]ourts have in narrow circumstances

permitted a plaintiff's motive for bringing suit to be considered to

demonstrate bias and undermine the credibility of a plaintiff who

testifies—when the evidence demonstrates that the plaintiff brought the

lawsuit for an ulterior purpose.").  In any event, although this is a diversity

jurisdiction case, it is federal evidence law—not state law—that generally

controls at trial.  *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003)

("Most evidentiary rules are procedural in nature, and the Federal Rules of

Evidence ordinarily govern in diversity cases.") (cleaned up); *Barron v. Ford*

30

*Motor Co. of Canada*, 965 F.2d 195, 198-99 (7th Cir. 1992) ("Even in diversity cases the rules of evidence applied in federal courts are the federal rules of evidence rather than state rules . . . save with respect to matters of presumptions, privilege, and competency of witnesses").  Sullivan makes no argument for why Hawaiʻi's evidentiary rules concerning a litigant's motives would be so "intimately bound up with the state's substantive decision making" that it "must be given full effect by federal courts sitting in diversity."  *Id.* (cleaned up).  And neither party has suggested that federal law would reach a different conclusion on this issue.

The Court need not parse these issues further, for there are straightforward reasons why arguments about Sullivan's intentions should not be permitted under Rule 403.  Were the Court to allow Loden to argue that Sullivan brought her claims against Loden because she feared taking on the estate itself and losing her inheritance (which is not necessarily a persuasive argument, given that the no-contest clause's terms are so broad that they might conceivably cover even her current claims against Loden), that argument would open the door to a broad array of materials that are

31

best excluded from this trial.  That would include, potentially, decisions in

Hawaiʻi state court, expert reports, and other materials that Sullivan might

have read—and that she might represent informed her views about the no-

contest clause.  At the hearing on this motion, Sullivan's counsel

persuasively described the extent to which these matters would devolve

into a confusing sideshow for the jury.  Rule 403 balancing weighs in favor

of keeping this argument out.  And so as to this possible use of the no-

contest clause, Plaintiff's Motion *in Limine* No. 7 is GRANTED.

## CONCLUSION

For the foregoing reasons, the Court rules as follows on the pending

motions *in limine*:

- The Court DENIES in part Plaintiff's Motion *in Limine* No. 1 and DENIES it in part as moot.

- The Court DENIES Plaintiff's Motions *in Limine* Nos. 2, 3, 5, and 6.

- The Court GRANTS in part and DENIES in part Plaintiff's Motion *in Limine* No. 7.

Plaintiff is ordered to propose any requested limiting instructions by

no later than Wednesday, October 16, 2024.

IT IS SO ORDERED.

DATED:  October 10, 2024, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

_____

Civil No. 21-00123 MWJS-RT, *Collen H.A. Sullivan v. Elliot H. Loden*; ORDER
ON PLAINTIFFS' MOTIONS IN LIMINE NOS. 1 – 3 AND 5 – 7