IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| COLLEEN H.A. SULLIVAN, individually and as Trustee of her Trust Agreement dated November 27, 1979,<br><br>Plaintiff,<br><br>vs.<br><br>ELLIOT H. LODEN,<br><br>Defendant. | Civil No. 21-00123 MWJS-RT<br><br>ORDER ON DEFENDANT'S MOTIONS IN LIMINE NOS. 2 – 14 |

## **INTRODUCTION**

In prior orders, this Court ruled on Plaintiff Colleen Sullivan's seven motions *in limine*, ECF Nos. 265 (No. 4) and 285 (Nos. 1-3, 5-7), and on the first of Defendant Elliot Loden's motions *in limine*, ECF No. 262.  The Court now resolves the remaining motions:  Defendant's Motions *in Limine* Nos. 2 through 14.  ECF Nos. 192-96, 198-99, 207, 216, and 218-21.  The Court assumes the reader's familiarity with the underlying facts and background, as well as with the Court's prior orders.

**A.    Defendant's Motion *in Limine* Nos. 2 and 14 [ECF Nos. 216 and 221]**

Count II of Sullivan's complaint alleges that Loden breached the fiduciary duty he owes her in her capacity as a beneficiary of the estate of her mother Joanna.  ECF No. 1, at PageID.14-15 (alleging that Loden "owed a duty of care to the Estate and its beneficiaries," that Sullivan was "a beneficiary of the Estate," that Loden "breached his fiduciary duty to Plaintiff as a beneficiary of the Estate," and that this breach caused Sullivan damages).  The foundational building block of that claim is the allegation that Sullivan is, indeed, a beneficiary of the Estate.

1.  In Defendant's Motions *in Limine* Nos. 2 and 14, Loden attacks that building block, arguing that Sullivan is not a beneficiary of the Estate. Loden explains that under Joanna's last will and testament, the only Estate assets left for Sullivan and her siblings were Joanna's personal and household effects.  ECF No. 216-1, at PageID.4184-85 ("All remaining estate assets constitute the residuary estate, which is devised to the Sullivan Trust.").  It follows, in Loden's view, that "the sole beneficiary of the Estate is the Sullivan Trust."  *Id.* at PageID.4185.  And for those reasons, Loden

2

now seeks an order "barr[ing]" Sullivan "from asserting that she is a beneficiary of the Estate to whom Loden would owe duties as Personal Representative." *Id.* at PageID.4188.  Loden also argues that Sullivan should be precluded from arguing for disgorgement of fiduciary fees because she is not a beneficiary of the Estate with standing to challenge those fees.  *Id.* at PageID.4188-91.

The fundamental problem with this argument is that it is the functional equivalent of a dispositive motion:  were the Court to agree that Sullivan is not a beneficiary of the Estate, it would be the end of Count 2 as a matter of law.  But the time to raise such an argument is not through a motion *in limine* shortly before trial, but rather through a timely dispositive motion.  *See David Sansone Co. v. Waiaha Ridge LLC*, No. CV 20-00411, 2023 WL 6958813, at *4 (D. Haw. Oct. 20, 2023) ("Motions in limine may not seek to dismiss, bar, or preclude a claim or defense, as such motions are subject to the deadline for filing dispositive motions.") (citing *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013)).  In this case, the deadline for filing dispositive motions closed on September 14, 2022.  ECF

No. 91, at PageID.1632.  Loden did, in fact, file a timely summary judgment motion, but that motion was limited to an attack on Count I of the complaint.  *See* ECF No. 94, at PageID.1642 n.1.  It is, put simply, too late now to ask the Court to rule on the legally sufficiency of Count II.

Nonetheless, in this motion, Loden argues that Sullivan's lack of beneficiary status goes to her constitutional Article III standing.  A federal court always has an obligation to assure itself that Article III standing exists, regardless of dispositive motion deadlines.  *See Bowen v. Energizer Holdings, Inc.*, No. 23-55116, 2024 WL 4352496, at *10 (9th Cir. 2024).  But Loden's argument about Sullivan's status as a beneficiary does not go to her constitutional standing.  Sullivan meets all of the Article III requirements.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, (2021) (explaining that to have Article III standing, "a plaintiff must show (i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief").  She offers evidence that she suffered injuries-in-fact:  at trial, she will contend

that Loden has improperly delayed his administration of the Estate,

thereby delaying the disbursement of trust assets and reducing the assets

to be distributed to her.  She contends that this injury-in-fact was caused by

Loden's conduct.  And she argues that an award of damages would redress

the injury.  Granted, if Sullivan does not prove to the jury that she was a

beneficiary of the Estate, then her claim that Loden breached his fiduciary

duties to her will fail.  But that is a "non-jurisdictional question of whether"

Sullivan has a valid "cause of action."  *Trendtex Fabrics, Ltd. NTKN, Inc.*, No.

CV 22-00287, 2024 WL 2701580, at *4 (D. Haw. May 23, 2024).  The Court

has Article III power over this case even if Sullivan is ultimately unable to

prove her claims.[1]

---

[1]    Loden also suggests that the Court should decline to revisit matters that have
been or are being litigated in probate court.  But Loden did not move for abstention.
And even if he had done so, it is far from clear that abstention would have been
appropriate:  generally, "the pendency of an action in the state court is no bar to
proceedings concerning the same matter in the Federal court having jurisdiction."
*Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 841 (9th Cir. 2017) (cleaned up); *see also
id.* at 842 (explaining that under the *Colorado River* doctrine, there "is a strong
presumption against federal abstention" in favor of a pending state case).  The Court
therefore must exercise the jurisdiction it possesses and allow the jury to hear the
dispute.

And there is reason to conclude that Sullivan has at least a shot at proving, at trial, that she is a beneficiary of the Estate.  As Sullivan points out, in Loden's answer to Sullivan's complaint, he admitted that Sullivan "is a beneficiary of Mrs. Sullivan's Estate, individually," a fact that this Court acknowledged in its order denying Loden's motion for summary judgment.  ECF No. 9, at PageID.44 (Answer at ¶ 41); ECF No. 94 at PageID.1654 (Order Denying Defendant's Motion for Summary Judgment).  Loden is bound to that admission, and there is no basis now to preclude Sullivan from pointing to that admission or otherwise offering evidence to show that Loden's admission is correct.  At the least, Loden's motions *in limine* have not offered a basis for doing so.

In her opposition papers, Sullivan identifies yet another reason why Loden's motion should be denied:  the decision of the Intermediate Court of Appeals of Hawaiʻi, in which it concluded that Sullivan is an "interested person" under Haw. Rev. Stat. § 560:1-201.  *Est. of Sullivan*, 146 Hawaiʻi 591, 597, 463 P.3d 1248, 1254 (Ct. App. 2020).  Loden's own contention is that to "establish standing for the breach of fiduciary duty claim, Plaintiff must

show that she is an 'interested person' in the Estate."  ECF No. 216-1, at

PageID.4189.  And the Hawaiʻi appellate court has already ruled that

Sullivan is an "interested person."  It did not reach this conclusion in dicta;

only an "interested person" can petition for the appointment of a special

administrator and therefore the court's conclusion that Sullivan was such a

person formed a critical part of the court's holding.  Loden's motion does

not address this holding or explain why it should not have preclusive effect

here.

    2.  At the hearing on Defendant's Motions *in Limine* Nos. 2 and 14,

Loden's counsel argued that, at a minimum, Sullivan should be limited to

presenting evidence and argument that relate to the claim she brought.

And given that Sullivan has only alleged that she was the beneficiary of the

Estate—and has not alleged that Loden breached any fiduciary duty owed

to the trust—Sullivan may only seek damages that flow from the Estate-

related breach.  Moreover, Loden argues that because Sullivan brings only

a claim on her own behalf, and not on behalf of the Estate, she may only

seek damages that she has incurred in her personal capacity.

These are appropriate arguments for a motion *in limine*, and the Court agrees with them in principle:  Sullivan chose what claim she wished to bring, Loden has no opportunity to bring a dispositive motion against any claims she did not bring, and Sullivan therefore must now be limited to her chosen claims.[2]

But applying that principle to the facts of this case is not a simple matter.  Sullivan argues that her evidence will show that Loden comingled and conflated his roles as personal representative of the Estate and trustee of the trust, and that he received payments from the trust for duties he performed on behalf of the Estate.  Sullivan also argues that by breaching his duties to her in his role as Estate fiduciary, Loden has effectively reduced (and delayed the disbursement of) trust assets to which Sullivan is

---

[2]      It is true that, under the "liberal policies reflected in Federal Rules of Civil Procedure 15(a) and 15(b)," a "demand" for judgment may be "amended either before or during trial."  5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1255 (4th ed. June 2024 Update).  But that flexibility extends only to demands for judgment, not to claims themselves.  *Id.* (explaining that the "sufficiency of a pleading is tested by the Rule 8(a)(2) statement of the claim for relief and the demand for judgment is not considered part of the claim for that purpose") (footnotes omitted).  Were it otherwise, a plaintiff could sidestep Rule 8(a)(2)'s pleading standards—indeed, sidestep motions to dismiss and motions for summary judgment entirely—by waiting until trial to announce their claim.

entitled.  It remains to be seen whether Sullivan will be able to prove the

causal relationship between Loden's alleged breach of fiduciary duties in

his role as personal representative to the Estate and the fees paid to him in

his role of trustee.  But Sullivan should have the opportunity to present her

evidence of causation to the jury.

That said, Sullivan will not be permitted to argue that Loden

breached his duty to the Estate (or Estate beneficiaries) simply by virtue of

breaching a duty he owes to the trust (or trust beneficiaries).  Nor will

Sullivan be permitted to argue that she should be compensated for

damages that flow solely from breaches of the duty owed to trust

beneficiaries.  But Sullivan is free to argue—and present evidence to the

effect—that a breach of the fiduciary duty owed to Estate beneficiaries

caused damages in the form of trustee fee payments.

The Court DENIES Defendant's Motions *in Limine* Nos. 2 and 14.[3]

---

[3]     The filings and orders in probate court need not themselves be admitted as evidence, however.  The Court agrees with Loden that the materials described in Defendant's Motion *in Limine* No. 14 could unnecessarily confuse the jury if admitted. Therefore, if Loden is prepared to stipulate to the relevant facts in those documents, the Court will not admit the documents themselves.  The parties should confer about a stipulation that would cover these grounds.

**B.      Defendant's Motion *in Limine* No. 3 [ECF No. 207]**

Sullivan wishes to recover more than just trustee fees paid to Loden. She also wishes to recover attorney's fees that she herself has incurred to litigate various matters in probate court.  In Defendant's Motion *in Limine* No. 3, Loden seeks to preclude evidence and argument about these fees. *See* ECF No. 207.  Loden also contends that under Hawaiʻi state law, these fees may not be recovered.  He further argues that Sullivan failed to produce the necessary invoices for these alleged fees during the discovery process.  The Court agrees with the first of these arguments, and so it need not resolve the second.

Both parties agree that on the substantive question of whether attorney's fees may be recovered as damages, Hawaiʻi state law controls. And both parties recognize that the authoritative decision is *Uyemura v. Wick*, 57 Hawaiʻi 171, 551 P.2d 171 (1976).  In that case, the Hawaiʻi Supreme Court recognized the "accepted rule on attorney's fees," which is that "ordinarily they cannot be awarded as damages or costs unless so provided by statute, stipulation or agreement."  *Id.* at 108, 551 P.2d at 176.

10

This was merely a recognition of "the bedrock principle known as the American Rule:  Each litigant pays [their] own attorney's fees, win or lose, unless a statute or contract provides otherwise."  *Baker Botts L.L.P. v. ASARCO LLC,* 576 U.S. 121, 126 (2015) (cleaned up).  This American Rule "has roots in our common law reaching back to at least the 18th century," and invasions of that rule "are to be read with a presumption favoring the retention of long-established and familiar legal principles."  *Id.* (cleaned up).

Although *Uyemura* recognized the American Rule, it also recognized a limited exception to that rule:

> In order to recover attorneys' fees under this principal, the plaintiff must establish:  (1) that the plaintiff had become involved in a legal dispute either because of a breach of contract by the defendant, or because of defendant's tortious conduct, that is, that the party sought to be charged with the fees was guilty of a wrongful or negligent act or breach of agreement; (2) that the litigation was with a third party, not with the defendant from whom the fees are sought to be recovered; (3) that the attorneys' fees were incurred in that third-party litigation; and (4) whether the fees and expenses were incurred as a result of defendant's breach of contract or tort . . . .

57 Hawaiʻi at 109, 551 P.2d at 176 (cleaned up).

11

The facts of *Uyemura* help to clarify the limits of this third-party-litigation exception to the American Rule. The case involved a classic land sale dispute: a seller looped in two separate buyers (without telling the second buyer of the first buyer's interest), and all three parties ended up as parties to a lawsuit. The first buyer filed a complaint against the seller, and later joined the second buyer as a defendant; the second buyer then brought a cross-claim against the seller. The key fact was this: the seller's misconduct caused the second buyer to have to litigate against a third party—that is, the first buyer. That was why it was appropriate to order the seller to pay damages in the form of attorney's fees that the second buyer expended in litigation with the first buyer. *Uyemura* thus recognizes an exception to the American Rule where a defendant's "wrongful act" forces the plaintiff to litigate against a third party and incur legal costs as a result. *Id.* at 108-09, 551 P.2d at 176.

Now consider Sullivan's case. The disputes between Sullivan and Loden have been between Sullivan and Loden. The attorney's fees Sullivan has expended have been incurred in litigation with Loden. Given these

12

facts, Sullivan cannot satisfy *Uyemura*'s second requirement:  that the litigation be against "a third party, not with the defendant from whom the fees are sought to be recovered." 57 Hawaiʻi at 109, 551 P.2d at 176 (cleaned up).  Nor can she satisfy *Uyemura*'s third requirement:  that the attorney's fees be "incurred in that third-party litigation." *Id.*  Accordingly, under the American Rule, Sullivan must cover her own fees.  It follows that Sullivan cannot argue to the jury that it should award her those attorney's fees as damages.

In her opposition, Sullivan argues that she satisfies *Uyemura*'s second requirement because her "fees were incurred in a separate matter, not in the pending litigation with the defendant."  ECF No. 243, at PageID.8177.  But *Uyemura* does not concern itself with the formality of a separate lawsuit.  It asks the substantive question of whether attorney's fees are incurred in litigation with a third party—that is, with someone other than the person the party has alleged committed the wrongdoing.  That much is made clear by the procedural history of *Uyemura* itself.  Recall that there was only a single lawsuit:  the first buyer had joined the second buyer as a

defendant, the second buyer then brought a cross-claim against the seller, and there was one trial and one appeal.  But while there was no separate lawsuit, the second seller still was entitled to attorney's fees from the seller.  And that was because the seller's conduct had entangled the second buyer in litigation with the first buyer—a third party to the alleged misconduct of the seller.  Sullivan has identified no similar third party here.[4]

Sullivan makes a similar argument about *Uyemura*'s third requirement.  She contends that she meets this requirement because "she incurred attorneys' fees in the other action."  ECF No. 243, at PageID.8178.  But again, *Uyemura* focuses on whether fees were incurred in *third-party* litigation.  Separate lawsuits involving the same two parties do not suffice.

For these reasons, Defendant's Motion *in Limine* No. 3 is GRANTED, and Sullivan is not permitted to make arguments or present evidence about

---

[4]    In addition to Sullivan and Loden, Sullivan's sisters were also parties to the proceedings at the Hawai'i Intermediate Court of Appeals.  *See Est. of Sullivan*, 146 Hawai'i at 591, 463 P.3d at 1249 (listing parties).  But Sullivan does not rely on that fact, and with good reason:  there is no evidence that Sullivan incurred any attorney's fees litigating against her sisters that she would not equally have spent litigating against Loden.  It is not the *existence* of third parties that matters under *Uyemura*.  The question is whether attorney's fees have been incurred in litigation *against* those third parties.

attorney's fees she has incurred in litigating matters against Loden in probate court or anywhere else.

### C.  Defendant's Motions *in Limine* Nos. 4 and 5 [ECF Nos. 218 and 219]

Count I of Sullivan's complaint centers on Loden's allegedly deficient stock valuations.  To support her theory of damages for this claim, Sullivan retained a valuation expert, Bryce Geyer, to provide testimony and prepare a report.

In two separate motions *in limine*, Loden challenges the admissibility of Geyer's proposed testimony.  In his Motion *in Limine* No. 4, Loden contends that Geyer should be precluded from offering testimony about the true economic value of the stock gifts, which amounted to slightly more than 21 percent of the company's stock.  *See* ECF No. 218, at PageID.4345. In Motion *in Limine* No. 5, Loden further argues that Geyer's opinion about the total 100 percent value of all Foodland company stock should also be excluded.  Both of these motions hinge on the same underlying assumptions:  that Geyer himself does not hold an expert opinion about the value of the stock gifts made to Sullivan's sisters, that he made certain

calculations purely because Sullivan's counsel asked him to do so and without applying his expertise, and that Sullivan is not an expert and should not have her own opinions conveyed to the jury through the medium of Geyer.

Loden's assumptions about the scope of Geyer's work may turn out to be correct, but the parties' pretrial submissions do not provide the Court with enough clarity to resolve that factual issue at this moment.  In her opposition—and more pointedly in supplemental submissions, *see* ECF No. 283—Sullivan argues that Geyer *does* in fact hold an expert opinion about the value of the 21 percent share.  And there is at least some support for Sullivan's contention.  Geyer stated that he was engaged to "render an opinion regarding the fair market value of the total equity value of Foodland Supermarket Limited in connection with the litigation."  *See* ECF No. 218-7, at PageID.4418 (Geyer Deposition).  He explained that he was retained to provide a valuation of the entire company, and then "asked to take additional steps to go from total equity value to specific blocks of shares." *Id.* at PageID.4419.  This, on its face, does not appear to be an

expert witness disclaiming any ability to value the "specific blocks of shares." *Id.*

Geyer did admit that for "gift tax purposes a valuation of a noncontrolling interest would be different from the valuation of a total equity interest." *Id.* at PageID.4420. That statement supports the conclusion that Geyer does not have an opinion about whether Loden's appraisals were appropriate for tax purposes. But it does not necessarily support Loden's contention that Geyer has no opinion about the true economic value of the stock gifts. And it is the latter opinion that matters for Sullivan's claims. Sullivan's damages theory is that if Joanna had been aware of the true economic value of the stock gifts, she would have given a correspondingly larger cash gift to Sullivan and her brother. To assist the jury in calculating damages under this theory, Geyer need not conduct an appraisal of the stock gifts for tax purposes; Loden's own appraisals are the baseline for that. The measure of damages is the difference *between* Loden's appraisal and the alleged true economic value, if the jury finds Geyer's testimony credible, and only if it first determines that Loden committed

malpractice.  So Sullivan only needs Geyer to provide an opinion about the true economic value of the stock gifts.

To be clear, the Court does not conclude that Geyer *does* have an opinion on the true economic value of the stock gifts.  Before getting into Geyer's numbers and calculations, Sullivan will need to establish that Geyer in fact developed expert opinions about that value.  Sullivan will also need to establish that Geyer possesses the necessary expertise, and Loden will be free to request an opportunity to conduct voir dire of the witness at trial if there are any doubts he wishes to explore before the Court makes a ruling on that question.[5]  But at this juncture, there is enough of a basis to permit Geyer to testify, so that Sullivan has the opportunity to make these showings.

Moreover, if Sullivan lays the appropriate factual foundation, it will be appropriate to allow Geyer to testify about his assessment of the total

---

[5]     Even if Sullivan lays a proper foundation for Geyer's testimony, Loden will still, of course, have a full opportunity to cross-examine him and offer his own evidence to show that Geyer's use of the "subtraction method of valuation" and Geyer's alleged failure to discount the valuation of the relevant share render his opinions unreliable. ECF No. 218-1, at PageID.4353.

value of the entire Foodland company.  As Sullivan explains, Loden and his own expert both begin by valuing the entire company as their starting point, and they then work their way down to valuing the 21 percent share that constituted the stock gifts.  There is no reason why Geyer should not be allowed to do the same, assuming Sullivan first lays a foundation that Geyer in fact used the total value of the company as a starting point for his own analysis.  And, indeed, were Geyer precluded from testifying about his top-line figures—which are much higher than those of both Loden and his expert—the jury would not be able to fairly and fully assess the credibility of Geyer's analysis.

As a final salvo, Loden argues that Geyer's testimony about the value of the stock gifts should be excluded because they were disclosed too late. It does appear that Sullivan did not produce this aspect of Geyer's testimony until after the expert deadline.  *See* ECF No. 219-1, at PageID.4435 (noting that Geyer submitted his "Adjusted Valuation Schedules" on November 22, 2022, "[a]fter Plaintiff's expert deadline passed").  But under the circumstances, any untimely disclosure is

harmless.  The supplemental opinion was disclosed nearly two years ago.

It was disclosed while discovery was open—indeed, in advance of Geyer's

deposition.  And Loden's counsel confronted Geyer about the

supplemental opinions during that deposition.  A witness exclusion

sanction is not appropriate under these circumstances.

For these reasons, Defendant's Motions *in Limine* Nos. 4 and 5 are

DENIED.

### D.    Defendant's Motions *in Limine* Nos. 6 and 7 [ECF Nos. 192 and 193]

Joanna passed away in September 2015.  The Sullivan Family

companies held their next annual shareholder meeting on November 13,

2015.  At trial, Sullivan intends to testify that, at that meeting, Loden

represented that cash gifts to Sullivan and her brother were made in lieu of

the 2011 and 2012 stock gifts to Sullivan's sisters.  Sullivan will argue that

Loden's statement supports her theory that the cash gifts were meant to

correspond to the stock gifts—and that Loden's undervaluation of the stock

gifts therefore caused Sullivan to receive a smaller cash gift than her

mother would have intended.

To corroborate Sullivan's own testimony, she also wishes to call two other witnesses—a Foodland corporate attorney named Stewart Pressman and one of Sullivan's own attorneys, Jodi Lopez—to testify about the November 13 meeting and subsequent events.

1.  Pressman is an attorney for the Sullivan Family companies who attended the November 13 meeting.  Sullivan contends that he heard Loden say at that meeting that the cash gifts to Sullivan and her brother were made in lieu of the stock gifts to Sullivan's sisters.  And she wants Pressman to testify about his recollection.  Although Pressman does not recall specifically that Loden made that statement, Sullivan argues that her own testimony supplies the foundation for concluding that the statement came from Loden and is therefore an opposing party statement admissible under Federal Rule of Evidence 801(d)(2).

In his Motion *in Limine* No. 6, Loden argues that Pressman should not be permitted to testify along these lines.  Loden provides a transcript of Pressman's deposition testimony.  That testimony shows Pressman does not recall if it was Loden himself who made the statement at the

November 13 meeting.  ECF No. 192-1, at PageID.3005 (quoting ECF No. 192-3, at PageID.3026).  Instead, Pressman stated that he was generally aware of the fact that "Colleen and Patrick had received a million dollars each as a result or to make more or less equal a stock transfer from Mrs. Sullivan to Jenai and Kitty."  ECF No. 192-3, at PageID.3026.  That testimony might support Sullivan's contention that Loden made the statement, even if Pressman cannot recall exactly who said it.  But the transcript also shows that Pressman does not recall *anyone* making that statement at the November 13 meeting.  As Pressman explained, although he "generally became aware . . . at some point" that the cash gifts were in lieu of the stock gifts, he does not "have a specific recollection of where this statement came from."  ECF No. 192-3, at PageID.3026, 3034.  Pressman emphasized that his understanding could have arisen "at any time prior to or subsequent to that meeting."  *Id.* at PageID.3034.  So it is not clear that he heard an actual statement to this effect, and he certainly did not testify that he heard any such statement at the November 13 meeting, as Sullivan suggests.

Pressman does not have a clear enough recollection to allow his testimony to be admitted.  Had he at least recalled hearing the relevant statement at the November 13 meeting, then Sullivan's testimony could have supplied the needed foundation for believing that Pressman was recalling Loden's statement—even if Pressman himself could not recall that it had come from Loden.  But Pressman's deposition testimony is clear that does not know from where he gained his understanding, and that he could have developed his understanding before or after the meeting.  Sullivan's testimony about the November 13 hearing therefore does not connect up with Pressman's testimony in the way Sullivan suggests.  His testimony is not properly admitted, and Defendant's Motion *in Limine* No. 6 is therefore GRANTED.

2.  Jodi Lopez is not counsel of record in this case, but she was one of Sullivan's attorneys at the time of the November 13, 2015, annual shareholder meeting.  In Motion *in Limine* No. 7, Loden argues that, as with Pressman, Lopez has no relevant non-hearsay information to offer.

In her opposition, Sullivan explains that annual shareholder meetings were typically tape recorded and that she therefore tasked Lopez with reaching out to Pressman to demand that the tape be preserved and produced to her.  ECF No. 246, at PageID.8955-56.  The tape was never produced, but Sullivan argues that her efforts to secure the tape are probative of her credibility.  The argument is that she would not have gone to those lengths to secure the recording if she did not firmly believe that the recording would support her recollection.

Loden responds that there is no basis to suggest that he had anything to do with destroying or concealing the tape, and that it therefore would not be appropriate to allow the jury to draw any adverse inferences against him simply because the tape was never produced by the Sullivan Family companies, over which he has no control.  But Sullivan represents that she is not asking for an adverse inference instruction or any negative inference against Loden.  She is merely asking to have the opportunity to argue to the jury that a positive inference should be drawn in favor of her own credibility.

Sullivan's credibility is one of the central issues in this trial.  For that reason, the Court will allow Sullivan to call Lopez to testify that Sullivan wanted to obtain the November 13 meeting recording and that Lopez was never able to retrieve it on Sullivan's behalf.  To ensure that the jury does not draw any inappropriate negative inference about Loden (whose credibility is also a key issue in this trial), the Court is also prepared to give a limiting instruction about the proper uses of this testimony.  Specifically, should Loden request it, the jury will be instructed that it may use Lopez's testimony only to assess whether it supports Sullivan's credibility, and that it may not draw any adverse inferences against Loden, given that there is no evidence that he had any control over the tape recording.  With these understandings, Defendant's Motion *in Limine* No. 7 is DENIED.[6]

//

//

---

[6]     Sullivan argues that Pressman should also be permitted to testify about Lopez's efforts to secure the tape recording.  Any such testimony would be unnecessarily cumulative.  Lopez is able to testify about all the interactions she had with Pressman and Sullivan has not identified any other ground that only Pressman could cover.  For that reason, although the Court allows Sullivan to call Lopez, the Court will not allow Sullivan to call Pressman to testify about the tape recording.

## E.     Defendant's Motion *in Limine* No. 8 [ECF No. 198]

In his Motion *in Limine* No. 8, Loden argues that Plaintiff's Exhibit 24,

a LexisNexis copy of the Hawaiʻi Intermediate Court of Appeals decision

in *Est. of Sullivan*, 146 Hawaiʻi 591, 463 P.3d 1248 (2020).  Loden argues that

the opinion has minimal, if any, probative value, and that it would greatly

confuse the jury.  Loden also argues that the LexisNexis copy of the

opinion is not an appropriate exhibit because, among other things, it

contains headnotes that are not an official part of the court's decision.

This motion is GRANTED.  The Court will not allow Sullivan to offer

Plaintiff's Exhibit 24 into the evidence in this case.  Probate matters are

challenging for anyone, even seasoned attorneys, to grasp.  And probate

matters are only peripheral to what is at stake in this federal case.  So there

is no good reason to ask the jury to become well-versed in probate matters,

just so that they can make sense of a state appellate court opinion,

especially when the details of that opinion have only marginal relevance to

the issues presented here.  And that is without considering the additional

complexity from offering a copy of the opinion that includes non-official content.

But Sullivan is correct that the Hawaiʻi Intermediate Court of Appeals resolved three issues that bear on the current case:  (1) that Sullivan is an "interested person" for purposes of the Estate; (2) that Sullivan's claim against Loden created a conflict of interest for Loden; and (3) that appointment of a special administrator was necessary to consider the claim Sullivan had raised.  Loden does not meaningfully dispute that the requirements for collateral estoppel under Hawaiʻi state law apply to these issues:  the issues resolved in the state court decision are identical to the same issues as presented here; there was a final judgment on the merits in state court; the issues decided were essential to the state court's final judgment; and Loden was a party to that state court adjudication.  *See Omerod v. Heirs of Kaheananui*, 116 Hawaiʻi 239, 264, 172 P.3d 983, 1008 (2007) (describing three elements of collateral estoppel).[7]

---

[7]    Hawaiʻi law applies because, in assessing the "preclusive effect of a state court judgment in a subsequent federal lawsuit," this Court must "accept the rules chosen by the State from which the judgment is taken."  *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (cleaned up).

The state court opinion need not, however, be admitted in full to ensure that its rulings are given their proper preclusive effect. Instead, the Court may take judicial notice of these rulings, and the jury can be advised of the substance of the rulings by way of a stipulation between the parties. At the hearing on these motions, counsel indicated that such a stipulation could be prepared. The parties therefore should propose a stipulation for the Court to consider.

### F.    Defendant's Motion *in Limine* No. 9 [ECF No. 220]

In connection with Count II of her complaint, Sullivan intends to offer evidence that Loden breached his fiduciary duty to her as a beneficiary because he declined to appoint a special administrator in probate court. Sullivan also intends to offer evidence of various challenges she has made to the fees Loden has received in probate court. In his Motion *in Limine* No. 9, Loden argues that evidence concerning these matters—many of which he says Sullivan has already litigated and lost in probate court—should be excluded from the upcoming trial.

1.  Loden does not argue that the probate court's rulings should be given collateral estoppel effect, perhaps because they have not yet been reduced to final judgments.  But Loden contends that the duplicative litigation doctrine should prevent Sullivan from "presenting evidence that has already been adjudicated in Probate Court."  ECF No. 220-1, at PageID.4545.  And he notes that "the duplicative litigation doctrine <u>does not</u> require a final judgment to bar litigating in two forums."  *Id.* at PageID.4546 (underline in original).

Loden is correct that the duplicative litigation doctrine does not require a final judgment.  But even so, the doctrine does not apply here. The doctrine precludes a plaintiff from "maintaining two separate actions involving the same subject matter at the same time in the same court against the same defendant."  *Arendi S.A.R.L. v. LG Elecs. Inc.*, 47 F.4th 1380, 1384 (Fed. Cir. 2022) (cleaned up).  It may also apply when the same subject matter is brought in different federal district courts.  *See, e.g.*, *The Haytian Republic*, 154 U.S. 118, 123-24 (1894).  But critically, the doctrine does not apply when one lawsuit is in federal court and the other is in state court—

29

for in that event, the separate actions would not be in the same court, or even in the same court system.  And it is well-established that "overlapping or even identical federal and state court litigation may proceed simultaneously, limited only by doctrines of abstention and comity."  *Noel v. Hall*, 341 F.3d 1148, 1159 (9th Cir. 2003).  Accordingly, the duplicative litigation doctrine does not bar Sullivan from litigating matters in federal court that she has separately litigated in state court.

2.  Switching gears, Loden argues that principles animating the probate exception to federal jurisdiction should lead the Court to exclude matters that are or have been litigated in probate court.  The Court disagrees.

As the Supreme Court made clear in *Marshall v. Marshall*, 547 U.S. 293 (2006), the probate exception is a limited exception to the Court's subject matter jurisdiction.  It only precludes federal courts from probating or annulling a will, administering a decedent's estate, or "endeavoring to dispose of property that is in the custody of a state probate court."  *Id.* at

311-12.  Sullivan's federal lawsuits does not ask the Court to do any of

those things.

Loden argues that *Marshall* can be distinguished because "unlike

[Sullivan], in *Marshall* the parties went straight to federal court."  ECF No.

220-1, at PageID.4548.  But while that is a factual distinction, it is not a

material one.  *Marshall* made clear what limited subjects fall outside the

scope of federal jurisdiction.  The list of excluded subjects does not expand

merely because litigants first bring other matters to the attention of the

probate court.

3.  Loden's final argument is that the Court should exclude matters

litigated in probate court because of "the policy" underlying the *Colorado*

*River* doctrine.  ECF No. 220-1, at PageID.4548; *see Colorado River Water*

*Conservation Dist. v. United States*, 424 U.S. 800 (1976).

"The *Colorado River* factors control whether a stay can issue in favor

of parallel state proceedings."  *Ernest Bock, LLC v. Steelman*, 76 F.4th 827,

843 (9th Cir. 2023).  And the Ninth Circuit has made clear that it reviews

stays in favor of parallel state proceedings are subject to "stricter" appellate

scrutiny because a trial court's discretion under the doctrine "must be exercised within the narrow and specific limits prescribed by the *Colorado River* doctrine." *Id.* at 835 (cleaned up).

It is far from clear that Loden can establish that the *Colorado River* doctrine's requirements weigh in favor of a stay here.  But he does not argue that they do.  His contention, instead, is that the Court should derive a policy principle from the *Colorado River* doctrine; allow this case to proceed to trial; and simply exclude Sullivan's evidence in light of the derived policy principle.  The Court declines to follow this approach.  If the *Colorado River* doctrine allowed a party to prevail—through the exclusion of their opponent's evidence at trial—then no party would ask for a stay under that doctrine.  Loden's proposed expansion of the *Colorado River* runs afoul of the Ninth Circuit's caution that trial courts should strictly abide by the doctrine's "narrow and specific limits."  *Id.*

\*     \*     \*

For the foregoing reasons, the Court concludes that none of Loden's arguments—concerning the duplicative litigation doctrine, the probate

exception, and the *Colorado River* doctrine—requires a blanket exclusion of Sullivan's proposed evidence related to probate court proceedings.

That said, the Court does not intend to allow extensive evidence about probate court matters.  As noted above, it would risk confusing the issues to place too much detail about probate court proceedings before the jury.  So long as Loden is prepared to stipulate to the basic facts surrounding key probate court matters, the Court will not allow Sullivan to present more detail than that.  For example, to the extent Sullivan wishes to argue that Loden obtained fees of a certain amount on a certain occasion, a stipulation would suffice to present those facts to the jury.  Submissions made in probate court, and probate court rulings on those submissions, need not themselves be admitted as exhibits at trial.  Likewise, and as noted earlier, a stipulation should suffice to bring to the attention the fact that a special administrator was appointed.

On these understandings, Defendant's Motion *in Limine* No. 9 is DENIED.

### G.      Defendant's Motion *in Limine* No. 10 [ECF No. 194]

Sullivan apparently seeks to introduce emails between one of her trial

counsel (Thomas Bush) and two other attorneys, Emily Kawashima Waters

and Rhonda Griswold, concerning probate court proceedings (Plaintiff's

Exhibits 25, 26, 27, and 50).  She also seeks to introduce her complaint in

this case (Plaintiff's Exhibit 103).  In his Motion *in Limine* No. 10, Loden

does not specifically seek to exclude these exhibits, but instead he moves to

preclude Sullivan's counsel from effectively testifying—through

"speaking" questions—about these materials when questioning witnesses.

*See* ECF No. 194-1, at PageID.3099-100 ("Plaintiff's trial counsel should not

be allowed to testify at trial about these letters because they were not listed

as potential witnesses by either Plaintiff or Defendant in their Pretrial

Statements.").

Loden's argument is persuasive.  Sullivan's trial counsel may not

testify about any of these matters—or any matters—through the guise of

witness questioning.  Nor will Loden's counsel be permitted to do so

through their questioning of witnesses.

Of course, Sullivan's counsel may show marked exhibits to witnesses (without publishing them to the jury), and then to ask witnesses if they are familiar with the documents presented.  If a foundation is laid to admit any relevant exhibit through a witness, then a party can offer it at that time.  The relevance of any such document can also be challenged and scrutinized then.  What counsel will not be permitted to do is to essentially tell the jury what unadmitted documents contain, only to then ask the witnesses if they are familiar with them.  Counsel may not, in other words, orally publish to the jury the contents of materials that have not been admitted into evidence for the jury's consideration.

Two final matters must be mentioned.  First, to the extent Sullivan intends to use her Plaintiff's Exhibit 103—which is her own complaint in this case—in witness questioning, it is far from clear that it would be appropriate to do so.  It is also far from clear why that complaint would be an appropriate exhibit to offer into evidence at trial.  But the Court will rule on any efforts to use Sullivan's complaint at trial if any such efforts are made.

Second, in her opposition, Sullivan argues that email correspondence from Loden's counsel would constitute non-hearsay statements of a party opponent and is admissible on that basis.  Perhaps so, but authentication of a document must come from a witness, not from counsel.  And, as Loden observes, Sullivan has not listed either Kawashima Waters or Griswold as a witness.  Nor has she listed her trial counsel, Bush, as a witness.  It therefore is unclear how Sullivan would authenticate the email correspondence included in Plaintiff's Exhibits 25, 26, 27, and 50, even if they would otherwise constitute non-hearsay.  To the extent Loden asks the Court to now rule that these exhibits are inadmissible, however, the Court declines to do so.  It is conceivable that witnesses might be familiar with the documents—for example, if someone was blind carbon copied on the emails—and the Court can rule on any objections to authentication at the appropriate time at trial.

On these understandings, Defendant's Motion *in Limine* No. 10 is GRANTED.

**H.     Defendant's Motion *in Limine* No. 11 [ECF No. 199]**

Several of Sullivan's proposed exhibits include documents from

probate proceedings, including "submissions to the Probate Court that, in

addition to the respective parties' factual statements, include legal

argument."  ECF No. 199, at PageID.3394.  The Court agrees with Loden

that any probative value of these documents themselves is substantially

outweighed by the risk of juror confusion if the documents were admitted.

For that reason, the Court GRANTS Defendant's Motion *in Limine* No. 11.

As with the materials challenged in Defendant's Motion *in Limine* No.

9, however, the basic facts that Sullivan seeks to offer from these filings are

proper subjects for judicial notice and stipulations between the parties.  The

parties therefore should confer about appropriate stipulations to cover the

relevant facts within these documents and proceedings.  To the extent that

Loden refuses to stipulate as to any fact, the Court can revisit whether any

specific document or exhibit itself must be admitted.

//

//

## I.      Defendant's Motion *in Limine* No. 12 [ECF No. 195]

In his Motion *in Limine* No. 12, Loden moves to exclude Plaintiff's

Exhibit 29, which evidently is a copy of probate court minutes and a

minute order requiring Loden to disburse $1 million from the trust to

Sullivan.  ECF No. 195-1, at PageID.3144.

Here again, the Court concludes that the fact of the probate court's

order—and the fact of any relevant filings leading up to the order—are

suitable for judicial notice.  And while the Court agrees with Loden that the

minutes themselves are not admissible because they are not necessarily an

accurate record of the Court's reasoning, Loden does not dispute that the

Court in fact ordered a $1 million disbursement.  And while the parties

present different factual narratives about *why* the disbursement was

ordered, Sullivan should at least have the opportunity to argue to the jury

that it was ordered *because* Loden refused to make the disbursement in a

timely manner.  The jury can then weigh the credibility of the parties'

competing narratives.

The parties therefore should confer about an appropriate stipulation about the facts relevant to this dispute.  On these understandings, Defendant's Motion *in Limine* No. 12 is DENIED.

## J.        Defendant's Motions *in Limine* No. 13 [ECF No. 196]

In his Motion *in Limine* No. 13, Loden moves to preclude testimony from Robert Taylor, a consultant who assisted special administrator Mark Murakami.  Loden argues that Taylor was not noticed as an expert and did not submit a written report.  ECF No. 196, at PageID.3269.

In opposition, Sullivan contends that although she failed to provide notice of Taylor as a witness, his "testimony is relevant, reliable, and admissible" because he assisted Murakami in reviewing Loden's appraisals of the stock gifts.  ECF No. 249, at PageID.9128.  She also points out that while she did not name Taylor as a witness, she disclosed Murakami's report itself.  *Id.* at PageID.9129.

Loden has the better of these arguments.  The Court has already precluded Murakami's testimony and report, and accordingly there is little probative value in Taylor's proposed testimony about his efforts to assist

Murakami.  Moreover, Taylor's proposed testimony amounts to expert testimony—for all of the same reasons why Murakami's proposed testimony amounted to expert testimony—and it therefore must be excluded because Sullivan concededly failed to provide appropriate expert notice.  The fact that Sullivan disclosed Murakami's report could *possibly* have been sufficient notice for Murakami (an issue the Court did not resolve in its ruling on Defendant's Motion *in Limine* No. 1), but there is no serious argument that that notice would be sufficient to disclose *Taylor* as an expert.

For these reasons, Defendant's Motion *in Limine* No. 13 is GRANTED.

## **CONCLUSION**

For the foregoing reasons, the Court rules as follows on the pending motions *in limine*:

- The Court GRANTS Defendant's Motions *in Limine* Nos. 3, 6, 8, 10, 11, and 13.

- The Court DENIES Defendant's Motions *in Limine* Nos. 2, 4, 5, 7, 9, 12, and 14.

Loden is ordered to propose any requested limiting instructions by no later than Thursday, October 17, 2024.  The parties should meet and confer about stipulations and make proposals to the Court as expeditiously as possible.

IT IS SO ORDERED.

DATED:  October 11, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

---

Civil No. 21-00123 MWJS-RT, *Collen H.A. Sullivan v. Elliot H. Loden*; ORDER ON DEFENDANT'S MOTIONS IN LIMINE NOS. 2 – 14.